**FARUQI & FARUQI LLP**
LISA T. OMOTO (SBN 303830)
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: (424) 256-2884
E-mail: lomoto@faruqilaw.com

*Counsel for Plaintiff and the Putative Classes*
*(Additional Counsel listed on Signature Page)*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVIEN CABALLERO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NAKED WHEY, INC., d/b/a NAKED NUTRITION<br><br>Defendant. | **Case No:**<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)<br>2. Violation of the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*)<br>3. Violation of the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*)<br>4. Fraud by Misrepresentation<br>5. Negligent Misrepresentation<br>6. Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Sevien Caballero ("Plaintiff"), individually and on behalf of all others similarly situated, through his undersigned attorneys, brings this Class Action Complaint against Defendant Naked Whey, Inc., doing business as Naked Nutrition ("Defendant" or "Naked"), for its knowing, reckless, negligent, and/or intentional practice of misrepresenting that its Naked Mass Vegan Mass Gainer protein powder products ("Products") are "premium" products "with nothing to hide" (the "*Ingredient Representations*"), and are "[v]erified for purity[,]" "[t]rusted for quality[,]" and "[i]ndependently tested for heavy metals" when, in fact, they contained or had a material risk of containing of Heavy Metals, including lead.[1] The Products are sold in California and throughout the United States and do not conform to their packaging. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full disclosure of the risk or presence of Heavy Metals on the Products' packaging, and restoring monies to the members of the proposed Class. Plaintiff makes the following allegations based on the investigation of his counsel, and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on his personal knowledge. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.     Naked Whey, Inc. is a leading manufacturer of protein powders and sports supplements, including the Naked Mass Vegan Mass Gainer products at issue.

2.     Defendant's Products contain dangerous toxins: Heavy Metals. As detailed below, individuals who consume Heavy Metals risk developing serious adverse health effects – a risk which most consumers strongly prefer to avoid. Yet, Defendant presented itself to consumers as a company they could trust, advertising its products as "premium" and "with nothing to hide," as shown below, when the Products contained or had a risk of containing Heavy Metals.

---

[1] As used herein, "Heavy Metals" includes arsenic, cadmium, and lead. Discovery may reveal the presence of additional heavy metals. Plaintiff reserves his right to amend and include any such heavy metals in this action.

CLASS ACTION COMPLAINT




3.     Consumers lack the knowledge and opportunity to determine whether Defendant's Products do in fact contain (or have a material risk of containing) Heavy Metals or to ascertain the true nature of the ingredients and quality of the Products. Reasonable consumers therefore must and do rely on Defendant to represent properly and fully what its Products contain. The importance of Defendant's representations is critical with respect to the risk or presence of Heavy Metals and such information would be material to any reasonable consumer's purchasing decisions.

4.     Defendant's packaging is designed to induce reasonable consumers to believe in the high quality and nutritiousness of its Products. But Defendant misrepresents the quality and nutritiousness of the Products in order to deceptively hide the presence (or risk) of Heavy Metals in the Products.

5.     Based on the material misrepresentations communicated by the packaging, no reasonable consumer could expect or understand that the Products contained or had a material risk of containing Heavy Metals.

CLASS ACTION COMPLAINT

6.      Defendant's website provides further context to demonstrate that the Products' packaging is intended to be deceptive by promising a healthy product that poses no material health risks. Specifically, Defendant promises on its website that: (1) Defendant uses "[p]remium ingredients without additives;" (2) its Products "support [consumers'] health and fitness goals[;]" and (3) Defendant's Products have "NOTHING TO HIDE[.]" These representations are each in direct contradiction to the undisclosed risk or presence of Heavy Metals in the Products.

# NUTRITION WITH NOTHING TO HIDE.®

Premium ingredients without additives, to support your health and fitness goals.

7.      On information and belief, Defendant was knowingly, recklessly, negligently, and/or intentionally selling Products that contained or risked containing detectable and excessive levels of lead but instead misrepresented the high quality and nutritiousness of the Products.

8.      On October 15, 2025, Consumer Reports published the results of its independent testing of protein powders. Consumer Reports acquired multiple samples of the Products, including samples from at least two distinct lots, over a three-month period from November through January 2025.[2] Consumer Reports' testing methodology is described as follows:

> The samples were transferred into brown polyethylene jars, blind-coded to preserve their identities, and shipped to an independent, accredited laboratory. At the laboratory, sample preparation or mixing was performed in fume hoods known to be free of contamination from trace metals. Water, sample containers, and

---

[2] https://article.images.consumerreports.org/image/upload/v1760108748/prod/content/dam/CRO-Images-2025/Special%20Projects/Consumer-Reports-Protein-Powders-and-Shakes-Contain-High-Levels-of-Lead-Methodology-Test-Results.pdf ("Test Methodology") (last accessed October 21, 2025).

CLASS ACTION COMPLAINT

other materials used for the analyses were monitored for contamination to account for any biases in sample results.

9.      Consumer Reports found that the Products conducted independent testing of a wide range of protein supplements, and found that just one serving of Naked Nutrition's Vegan Naked Mass Gainer contains 7.7 micrograms of lead, approximately 1,570 percent of the California Office of Environmental Health and Hazard Assessment's ("OEHHA") Maximum Allowable Dose Levels ("MADL") limit of 0.5 micrograms, which was established through California's Proposition 65 ("Prop 65").[3] Consumer Reports uses the Prop 65 standard "because the standards [in Prop 65] are the most protective of health."[4]

10.     The health risks and toxicity of heavy metals, including lead, has been well-documented by various health authorities, including the Center for Disease Control (the "CDC"),[5] the United States Food & Drug Administration (the "FDA"),[6] the United States Environmental Protection Agency (the "EPA"),[7] and the World Health Organization (the "WHO").[8]

11.     According to the WHO, "[t]here is no level of exposure to lead that is known to be without harmful effects."[9] Put another way, ***there is no safe level of lead exposure***.

---

[3] https://www.consumerreports.org/lead/protein-powders-and-shakes-contain-high-levels-of-lead-a4206364640/ (last accessed October 21, 2025).

[4] Test Methodology, *supra* note 2, p. 4.

[5] https://archive.cdc.gov/www_atsdr_cdc_gov/csem/leadtoxicity/physiological_effects.html (last accessed October 21, 2025).

[6] https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares#:~:text=An%20interim%20reference%20level%20(IRL,is%20a%20potential%20health%20concern (last accessed October 21, 2025).

[7] https://www.epa.gov/lead/learn-about-lead#effects (last accessed October 21, 2025).

[8] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (last accessed October 21, 2025).

[9] *Id*.

CLASS ACTION COMPLAINT

12.     The FDA has established interim reference levels, which serve as benchmarks to protect against harm from and exposure to lead toxicity.[10] Noting findings by scientists at the FDA that "[t]he average American adult is exposed to up to 5.3 micrograms of lead each day through their diet," which is exacerbated by the fact that lead exposure can stem from other sources, including the air, soil, or household contaminants like dust, Consumer Reports explained that consuming just one serving of the Products would likely exceed the FDA's interim reference level for dietary lead, as demonstrated in the infographic below.[11]



**Loading Up on Lead**

**5.3** MCG
Daily lead exposure of the average American adult.

**7.7** MCG
One serving of Naked Nutrition's Mass Gainer.

**13** MCG
Both together.

**8.8** MCG PER DAY
FDA Interim Reference Level for dietary lead.

[10] *See supra* note 6.

[11] *See supra* note 3.

CLASS ACTION COMPLAINT

13.    Exposure to lead is toxic to humans regardless of age or health status.[12] Lead exposure in adults can lead to harmful effects, such as impaired kidney functions, increased blood pressure and hypertension, and reproductive issues.[13]

14.    Lead exposure is also critically dangerous for children and pregnant women, who may also consume the Products. Children exposed to lead can suffer serious consequences because of damage to the brain and central nervous system, including intellectual disabilities, behavioral disorders, and lower intelligence quotients.[14] Fetuses can also be harmed—including by premature birth; brain, kidney, or nervous system functions being impaired; or increased risk of learning or behavioral disorders—by exposure of pregnant women to lead, even prior to pregnancy, as lead accumulates in the body over time.[15] Exposure to lead can also increase the risk of miscarriage.[16]

15.    Moreover, health regulatory agencies, such as the European Food Safety Authority (the "EFSA"), recognize heavy metals, including lead, to be "contaminants" in food, exposure to which can cause harmful effects and health risks.[17]

16.    Chronic lead exposure, which may be caused by regularly consuming food products containing lead, poses additional health concerns, such as immune suppression and kidney damage.[18]

17.    Protein powders are consumed regularly as part of many people's "daily routine[s]."[19] Even teenagers have begun incorporating protein supplements into their diets; a

---

[12] *See supra* note 6.

[13] *See supra* note 7.

[14] *See supra* note. 8.

[15] *See supra* note 7.

[16] *Id.*

[17] https://www.efsa.europa.eu/en/topics/topic/metals-contaminants-food (last accessed October 21, 2025).

[18] Consumer Reports, *Protein Powders and Shakes Contain High Levels of Lead*, *supra* note 1.

[19] *Id.*

CLASS ACTION COMPLAINT

University of Michigan study found that 40% of teenagers consumed some type of protein supplement last year.[20]

18.    Plant-based protein supplements have specifically surged in popularity, particularly amongst younger demographics, as the focus shifts towards health and wellness awareness, personalized health trends, and sustainability and being environmentally conscious.[21] As a result of this rapid growth and rising interest, the plant-based protein supplements industry is expected to be valued at close to $6 billion dollars by 2033.[22]

19.    Despite the known health risks, Defendant knowingly, recklessly, negligently, and/or intentionally chose to misrepresent the true quality and nutritiousness of the Products when, in fact, the Products contained or risked containing Heavy Metals.

20.    The Products' packaging does not include any type of disclaimer or disclosure regarding the presence of Heavy Metals that would inform consumers of their presence or risk. Likewise, nothing on the packaging states that ingestion of Heavy Metals can be unsafe or accumulate over time resulting in developmental issues, poisoning, injury, and/or disease.

21.    Instead, to induce reasonable consumers to believe in the quality and nutritiousness of its Products and to justify a price that reflects a premium, Defendant chose to focus on promoting the Products on its packaging as high quality and made with premium ingredients.

22.    Indeed, Defendant also markets the Products on its website and other online retailers such as Amazon.com by stating that the Products are "[v]erified for purity[,]" "[t]rusted for quality," and even that they are "[i]ndependently tested for heavy metals[,]" as shown below.

---

[20] Yuki Noguchi, *Teens are trying to bulk up on protein supplements. What should parents watch for?* NPR (July 21, 2025), https://www.npr.org/2025/07/21/nx-s1-5447441/protein-powder-supplement-teen-boys-nutrition#:~:text=Protein%20supplements%20are%20big%20on, iStockphoto/Getty%20Images%20hide%20caption (last accessed October 21, 2025).

[21] Grand View Research, *Plant-Based Protein Supplements Market (2025 – 2033)*, https://www.grandviewresearch.com/industry-analysis/plant-based-protein-supplements-market (last accessed October 21, 2025).

[22] *Id.*

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20    23.    Based on Defendant's packaging, no reasonable consumer had any reason to know

21 or expect that the Products contained Heavy Metals. Furthermore, reasonable consumers, like

22 Plaintiff and the Class members, would consider quality, nutritiousness, and the mere presence (or

23 risk) of Heavy Metals material when considering purchasing the Products.

24    24.    Defendant knows its customers trust the quality of its Products and expect the

25 Products to be properly and safely manufactured and free from the risk and actual presence of

26 Heavy Metals. Defendant also knows its consumers seek out and wish to purchase protein powders

27 and supplements that possess nutritious ingredients free of toxins, contaminants, or chemicals, and

28

that these consumers will pay for protein powders and supplements that they believe possess these qualities. Defendant also knows no reasonable consumer would knowingly consume protein powders or supplements containing Heavy Metals.

25.     Defendant also knew consumers believed the Products were a premium product based on the misrepresentations.

26.     The misrepresentations are deceptive, misleading, unfair, and/or false because the Products were manufactured in such a way that they contained (or risked containing) undisclosed Heavy Metals.

27.     The material misrepresentations allowed Defendant to capitalize on, and reap enormous profits from, reasonable consumers who paid a premium price for Products that did not disclose their true quality and nutritiousness, and, in turn, their true value. Defendant continues to wrongfully induce consumers to purchase the Products while promoting the Products' high quality and nutritious ingredients that, in fact, contain or risk containing Heavy Metals.

28.     Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Classes (as defined herein), who, from the applicable limitations period up to and including the present, purchased for household use and not resale any of Defendant's Products.

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between some members of the proposed Classes and Defendant.

30.     This Court has personal jurisdiction over Defendant because Naked Whey, Inc. has sufficient minimum contacts with the State of California, and/or otherwise intentionally avails itself of the markets in the State of California through the promotion, marketing, and sale of the Products in this State to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

CLASS ACTION COMPLAINT

31.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**THE PARTIES**

32.     Plaintiff Sevien Caballero is, and at times relevant hereto has been, a resident of Solano County in the State of California. He purchased the Products, including Naked Mass Vegan Mass Gainer, for household use.

33.     Plaintiff purchased the Products online from Amazon.com for delivery to his home in Solano County, California, from approximately October 2024 until October 2025.

34.     Plaintiff believed he was purchasing high-quality, nutritious, plant-based protein powder, and was purchasing a premium brand. Prior to purchasing the Products, Plaintiff saw and relied upon the packaging of the Products, including the front-label *Ingredient Representations.*

35.     During the time he purchased and consumer the Products, and due to the misrepresentations by Defendant, he was unaware the Products contained (or had a material risk of containing) Heavy Metals and would not have purchased the Products if that information had been fully disclosed. Plaintiff would be willing to purchase Defendant's Products in the future if he could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

36.     As a result of Defendant's intentionally, recklessly, negligently, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when he paid the purchase price or a price premium for the Products that did not deliver what was promised by Defendant. Plaintiff paid the purchase price on the reasonable assumptions that the *Ingredient Representations* were accurate, the Products were free of Heavy Metals and posed no potential harm to his physical and mental health – long term or short term. Plaintiff would not have paid this money had he known the truth about the misrepresentations. Further, should Plaintiff encounter the Products in the future, he could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Products. Damages can be calculated through expert testimony at trial.

CLASS ACTION COMPLAINT

37. Defendant Naked Whey, Inc. (doing business as Naked Nutrition) is a Florida corporation with its principal address located at 382 NE 191st Street, Suite 50062, Miami, Florida 33179, in Miami-Dade County.

38. Defendant has formulated, developed, manufactured, labeled, distributed, marketed, advertised, and sold the Products throughout the United States, including in this District. Defendant has done so throughout the applicable statute of limitations periods.

39. Defendant intentionally, recklessly, negligently, and/or knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for the Products that mispresented the high quality and nutritiousness of the Products when, in fact, the Products contained or risk containing Heavy Metals. Defendant is also responsible for sourcing ingredients, manufacturing the Products, and conducting all relevant quality assurance protocols, including testing the Products and their ingredients.

40. Plaintiff relied upon the Products' packaging and the material misrepresentations, which were disseminated by Defendant and its agents in this District. The packaging materially misrepresented and partially misrepresented the high quality and nutritiousness of the Products, information that a reasonable consumer would consider important in purchasing the Products, because the Products contained Heavy Metals.

41. The Products, at a minimum, include Naked Mass Vegan Mass Gainer in all flavors and sizes, including Unflavored, Vanilla, Chocolate, Double Chocolate, and Chocolate PB varieties.

## **FACTUAL ALLEGATIONS**

## I.    **DEFENDANT DECEPTIVELY MARKETS AND SELLS THE PRODUCTS**

42. Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells the Products throughout the United States, including in this District.

43. The Products are available at numerous retail and online outlets. The Products are widely advertised.

CLASS ACTION COMPLAINT

44.     Despite knowing that the Products contain (or materially risk containing) Heavy Metals, and despite doing nothing to alleviate their presence or risk, Defendant markets the Products in a manner that conveys to reasonable consumers, including Plaintiff, that the Products do not contain Heavy Metals.

45.     The Products' packaging misrepresentations (collectively, "*Ingredient Representations*") include, but are not limited to the following:

(a)     The Products are made with "premium ingredients";

(b)     The Products have "nothing to hide."

46.     The *Ingredient Representations* indicate the absence of any potentially unsafe or harmful substances in the Products.

47.     The *Ingredient Representations* misled and deceived reasonable consumers into believing that the Products are high quality, healthy, and nutritious while they actually contained (or had a material risk of containing) Heavy Metals.

48.     Based on the *Ingredient Representations*, no reasonable consumer could expect or understand that the Products contained (or had a material risk of containing) Heavy Metals.

49.     The *Ingredient Representations* wrongfully convey to consumers that the Products have a quality and nutritiousness that they do not actually possess.

50.     Defendant also markets its *Ingredient Representations* about the Products on its website, including graphics stating that the Products are "[v]erified for purity[,]" "[t]rusted for quality," and even that they are "[i]ndependently tested for heavy metals[,]" as shown below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    51.    Based on Defendant's decision to package the Products as high quality and made

17  with nutritious ingredients, it had a duty to ensure that the Products' packaging was true and not

18  misleading.

19    52.    Defendant also had exclusive and/or superior knowledge about the quality and

20  nutritiousness of the Products, including the presence or material risk of Heavy Metals in the

21  Products, but chose to deceptively mislead consumers about that information.

22    53.    As a result of the *Ingredient Representations* that deceptively misrepresented the

23  quality and nutritiousness of the Products, a reasonable consumer would have no reason to suspect

24  the presence (or material risk) of Heavy Metals in the Products without conducting his or her own

25  scientific tests (which is not available to the average consumer) or reviewing third-party scientific

26  testing of the Products.

27
28

CLASS ACTION COMPLAINT

54.    Defendant knowingly, recklessly, and/or intentionally made the *Ingredient Representations,* and omitted from its packaging any mention of the presence (or material risk) of Heavy Metals in the Products, in order to induce and mislead reasonable consumers to purchase the Products.

## II.    THE PRODUCTS CONTAIN HEAVY METALS

55.    Although Defendant misleadingly causes consumers to believe the Products do not contain Heavy Metals though the *Ingredient Representations*, the Products do in fact contain undisclosed Heavy Metals, which is material information to reasonable consumers.

56.    As noted above, on October 15, 2025, Consumer Reports published an article titled "Protein Powders and Shakes Contain High Levels of Lead," in which it detailed the results of tests of 23 products, including the Products at issue.

57.    Consumer Reports tested multiple lots of the Products and averaged the results to provide an accurate assessment of the heavy metals content of the Products.

58.    Consumer Reports found that a single serving of Defendant's Products contains 7.7 micrograms of lead, which is 1,572% of the Prop 65 MADL, which Consumer Reports refers to as its "Level of Concern for Lead."[23]

59.    Accordingly, Consumer Reports designated the Products as one of the "PRODUCTS TO AVOID" based on the excessive levels of lead, as shown below:

---

[23] *See supra* note 3.

1

2

3



**PRODUCTS TO AVOID**

**Naked Nutrition**

Vegan Mass Gainer

**Serving Size:**
315 grams
(6 scoops)





WEEKLY MAX

**1,572%**
CR's Level of Concern for Lead
PER SERVING

DAILY MAX

**0**

Servings per Week Limit

### III.    DEFENDANT KNEW OR SHOULD HAVE KNOWN OF THE HEALTH RISKS PRESENTED FROM HEAVY METALS

60.    Defendant knew or should have known that Heavy Metals pose health risks to consumers.

61.    There are no safe levels of exposure to lead.[24]

62.    Because Heavy Metals can bioaccumulate in the body, even regular consumption of small amounts can increase the material risk of various health issues, including bladder, lung, and skin cancer, cognitive and reproductive problems, and type 2 diabetes.[25]

---

[24] *See supra* notes 7 and 8.

[25] *Id*.

CLASS ACTION COMPLAINT

63.    The Products contain (or have a material risk of containing) lead, which is "reasonably anticipated to be [a] human carcinogen[]."[26]

64.    Exposure to lead in food builds up over time. Build-up can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

65.    Lead is extremely toxic, and its effects cannot be reversed or remediated.[27]

66.    Because of public health efforts, exposure to lead has consistently and notably decreased over the past 45 years.[28] These efforts include increasing awareness of the dangers of even low levels of lead exposure.[29]

67.    While the FDA has not established action levels related to Heavy Metals in protein powders, action levels only set limits for determining when products cannot be placed in the market.

## IV.    DEFENDANT KNEW THE QUALITY AND NUTRITIOUSNESS OF THE PRODUCTS, INCLUDING THE PRESENCE OR RISK OF HEAVY METALS, IS MATERIAL TO CONSUMERS

68.    Defendant knew that consumers purchase the Products based on the reasonable expectation that Defendant manufactured the Products to the highest standards. In fact, Defendant

---

[26] *See* American Cancer Society, *Known and Probable Carcinogens* (last revised Aug. 1, 2024), https://www.cancer.org/cancer/cancer-causes/general-info/known-and-probable-human-carcinogens.html (last accessed October 21, 2025).

[27] https://my.clevelandclinic.org/health/diseases/11312-lead-poisoning (last accessed October 21, 2025)

[28] *See* Timothy Dignam, et al., *Control of Lead Sources in the United States, 1970-2017: Public Health Progress and Current Challenges to Eliminating Lead Exposure*, JOURNAL OF PUBLIC HEALTH MANAGEMENT AND PRACTICE (Jan.-Feb. 2019), 25 Suppl 1, Lead Poisoning Prevention (Suppl 1 LEAD POISONING PREVENTION), S13–S22, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6522252/ (last accessed October 21, 2025).

[29] *See id.*

CLASS ACTION COMPLAINT

promised as much on its website, by promising that the Products are "[v]erified for purity[,]" "[t]rusted for quality[,]" and "[i]ndependently tested for heavy metals[,]" as discussed above.

69.    Further, Defendant markets the Products by stating that they "[m]eet[] FDA safety reference levels[.]" This is knowingly, willfully, or recklessly misleading because Defendant knows or should know that FDA does not have a safety reference level for heavy metals, as discussed, *supra*.

70.    Based on the *Ingredient Representations*, Defendant knew or should have known that consumers reasonably believed that Defendant would hold the Products to the highest standards for preventing the inclusion of Heavy Metals in the Products.

71.    Further, Defendant's website plainly states that Defendant tests the Products and their ingredients for Heavy Metals.

**V.    DEFENDANT'S CLAIMS MISLED REASONABLE CONSUMERS**

72.    Based on the *Ingredient Representations*, a reasonable consumer would not expect the presence of Heavy Metals in the Products, nor would a reasonable consumer be able to detect the presence of Heavy Metals in the Products, without conducting his or her own scientific tests or reviewing scientific testing conducted on the Products.

73.    Reasonable consumers must and do rely on Defendant to honestly disclose what the Products contain.

74.    Plaintiff relied on the *Ingredient Representations* when making his purchasing decisions.

75.    In light of the *Ingredient Representations*, Defendant knew or should have known the Products or their ingredients contained or risked containing Heavy Metals.

76.    Defendant acted knowingly, recklessly, and/or intentionally with its deceptive packaging based on the inclusion and prominence of the *Ingredient Representations*.

77.    Defendant had a duty to ensure the Products were not deceptively, misleadingly, unfairly, and/or falsely marketed and all material information was properly and fully disclosed. For example, as the FDA recently stated in connection with the recall of applesauce due to the

presence of lead, "Companies have the responsibility to take steps to assure that the products they manufacture are not contaminated with unsafe levels of heavy metals."[30]

78.    Finally, Defendant knew or should have known it could control the levels of Heavy Metals in the Products by properly monitoring their ingredients for Heavy Metals and adjusting any formulation to eliminate ingredients that contained or risked containing Heavy Metals.

79.    The *Ingredient Representations* are material and reasonably likely to deceive reasonable consumers, such as Plaintiff, in their purchasing decisions.

80.    The *Ingredient Representations* make the Products' packaging deceptive. Reasonable consumers, like Plaintiff, would consider the fact that the Products contained (or had a material risk of containing) Heavy Metals when considering protein powders and supplements.

81.    At all times during the applicable statute of limitations period, Defendant knew it was not following proper manufacturing standards, nor its own representations, when it did not sufficiently and consistently monitor or test the Products or their ingredients for Heavy Metals.

82.    Defendant's *Ingredient Representations* were misleading about the true quality and nutritiousness of the Products, and Defendant failed to disclose the presence or material risk of the presence of Heavy Metals.

83.    Defendant knew or should have known the Products contained or risked containing undisclosed levels of Heavy Metals that were inconsistent with Defendant's *Ingredient Representations*.

84.    Defendant knew or should have known that reasonable consumers expected it to have sufficient and adequate manufacturing processes that would ensure the Products and their ingredients were monitored and tested for Heavy Metals to ensure with the truthfulness of Defendant's *Ingredient Representations*.

---

[30] Christina Jewett and Will Fitzgibbon, *Lead-Tainted Applesauce Sailed Through Gaps in Food-Safety System*, NEW YORK TIMES (Feb. 27, 2024), https://www.nytimes.com/2024/02/27/world/europe/lead-applesauce-food-safety.html?smid=nytcore-ios-share&referringSource=articleShare (last accessed October 21, 2025).

CLASS ACTION COMPLAINT

85.    The *Ingredient Representations* were intended to and did, in fact, cause consumers like Plaintiff and the Class to purchase, or pay a premium for, products they would not have if the true quality and nutritiousness of the Products and their ingredients were disclosed.

86.    As a result of Defendant's *Ingredient*, Defendant was able to generate substantial sales, which allowed Defendant to capitalize on, and reap enormous profits from, consumers who paid the purchase price or premium for the Products that were not as advertised.

## PLAINTIFF'S RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANT

87.    Plaintiff read and relied upon the packaging of the Products when making his purchasing decisions. Had he known Defendant misrepresented the quality and nutritiousness of the Products, he would not have purchased the Products or paid a premium price.

88.    A reasonable consumer would consider the packaging of a product when deciding whether to purchase it.

## CLASS ACTION ALLEGATIONS

89.    Plaintiff brings this action individually and on behalf of the following classes pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure:

> **Nationwide Class**: All persons who, within the applicable statute of limitations period, purchased the Products for household use, and not for resale (the "Class").

> **California Subclass**: All persons who are residents of California who, within the applicable statute of limitations period, purchased the Products in California for household use, and not for resale (the "California Subclass").

90.    The Class and Subclass are collectively referred to as "the Classes."

91.    Excluded from the Classes are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

CLASS ACTION COMPLAINT

92.     This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

93.     The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and Court.

94.     Questions of law and fact common to Plaintiff and the Classes include, but are not limited to, the following:

(a)     whether the labels were misleading to a reasonable consumer;

(b)     whether Defendant owed a duty to disclose based on the misrepresentations;

(c)     whether Defendant knew or should have known that the Products and their ingredients contained or risked containing Heavy Metals;

(d)     whether Defendant misrepresented the Products by making the *Ingredient Representations*;

(e)     whether Defendant deceptively hid the presence or risk of Heavy Metals in the Products;

(f)     whether the claims of the Plaintiff and the Classes serve a public benefit;

(g)     whether Defendant's packaging is false, deceptive, and misleading based on the Claims;

(h)     whether the Claims are material to a reasonable consumer;

(i)     whether the Claims are likely to deceive a reasonable consumer;

(j)     whether Defendant had knowledge that Claims were material and false, deceptive, and/or misleading;

(k)     whether Defendant breached its duty of care;

(l)     whether Defendant breached its duty to disclose;

(m)     whether Defendant violated the laws of the State of California;

(n)     whether Defendant engaged in unfair trade practices;

1          (o)      whether Defendant engaged in false advertising;

2          (p)      whether Plaintiff and Class members are entitled to actual, statutory, and

3    punitive damages; and

4          (q)      whether Plaintiff and members of the Classes are entitled to declaratory and

5    injunctive relief.

6          95.      Defendant engaged in a common course of conduct giving rise to the legal rights

7    sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes.

8    Identical statutory violations and business practices and harm are involved. Individual questions,

9    if any, are not prevalent in comparison to the numerous common questions that dominate this

10   action.

11         96.      Plaintiff's claims are typical of those of the members of the Classes in that they are

12   based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

13         97.      Plaintiff will fairly and adequately represent and protect the interests of the Classes,

14   has no interests incompatible with the interests of the Classes, and has retained counsel competent

15   and experienced in class action, consumer protection, and false advertising litigation.

16         98.      Class treatment is superior to other options for resolution of the controversy

17   because the relief sought for each member of the Classes is small such that, absent representative

18   litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

19         99.      Questions of law and fact common to the Classes predominate over any questions

20   affecting only individual members of the Classes.

21         100.     As a result of the foregoing, class treatment is appropriate.

22                              **CLAIMS FOR RELIEF**

23                                  **COUNT I**
       **Violation of the Unfair Competition Law, California Business & Professions Code § 17200,**
24     ***et seq.*, Against Defendant on Behalf of Plaintiff and the California Subclass**

25

26         101.     Plaintiff incorporates by reference and realleges each and every allegation

27   contained above, as though full set forth herein.

28

---
                                    21

102.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

**Fraudulent**

103.    A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

104.    As set forth herein, Defendant's *Ingredient Representations* are likely to deceive reasonable consumers and the public. Specifically, Defendant misleadingly marketed to reasonable consumers that the Products did not contain Heavy Metals based on the Claims on the Products' packaging.

**Unlawful**

105.    As alleged herein, Defendant has advertised the Products with misrepresentations such that Defendant's actions violate at least the following laws:

- The CLRA, California Business & Professions Code §§ 1750, *et seq*.; and

- The False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*

**Unfair**

106.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products was unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

107.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, California's False Advertising Law and the CLRA.

108.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves can reasonably avoid. Specifically, the increase in profits obtained by Defendant through the

22

misleading labeling does not outweigh the harm to Plaintiff and members of the Class who were deceived into purchasing the Products unaware that they contain Heavy Metals, and are of the type that can increase the risk of detriment to health. Consumers could not have reasonably avoided the harm because this would have required that they conduct their own research into the Heavy Metal content of the Products, which could only feasibly be revealed by laboratory testing, which is not a reasonable expectation. Further, the harm could have easily been avoided by Defendant my not including the *Ingredient Representations,* or disclosing to consumers that the Products contain Heavy Metals.

109.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unsuspecting consumers.

110.    Plaintiff and other members of the Classes are likely to continue to be damaged by Defendant's unlawful, unfair, and/or fraudulent acts or practices because Defendant continues to disseminate misleading information. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

111.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other members of the Classes. Plaintiff suffered injury in fact as a result of Defendant's unlawful conduct.

112.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices.

113.    Plaintiff also seeks an order for the restitution of all monies from the sale of the Products that were unjustly acquired through acts of unlawful competition.

114.    Because Plaintiff's claims under the "unfair" prong of the UCL sweep more broadly than his claims under the FAL, CLRA, or UCL's "fraudulent" prong, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff for all of Defendant's behavior.

CLASS ACTION COMPLAINT

## COUNT II

**Violation of California False Advertising Law, California Business & Professions Code § 17500, *et seq*., Against Defendant on Behalf of Plaintiff and the California Subclass**

115.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

116.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

117.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

118.    As alleged herein, specifically, Defendant misleadingly marketed to reasonable consumers that the Products did not contain Heavy Metals through the *Ingredient Representations*. Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein because Plaintiff purchased the Products in reliance on Defendant's false and misleading marketing claims.

119.    Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known.

120.    Defendant profited from the sale of the falsely and deceptively advertised Products to unsuspecting consumers.

121.    As a result, Plaintiff, members of the Classes, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

122.    Pursuant to California Business and Professions Code section 17535, Plaintiff, on behalf of himself and members of the Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

123.    Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA, and restitution is not limited to returning to Plaintiff and members of the Class monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies under the CLRA are more limited than the equitable remedies under the FAL, and are therefore inadequate.

## <u>COUNT III</u>

**Violations of California's Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*., Against Defendant on Behalf of Plaintiff and the California Subclass**

124.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

125.    Plaintiff and each member of the California Subclass is a "consumer," as that term is defined in California Civil Code section 1761(d).

126.    The Products are "goods," as that term is defined in California Civil Code section 1761(a).

127.    Defendant is a "person" as that term is defined in California Civil Code section 1761(c).

128.    Plaintiff's and each member of the California Subclass's purchases of the Products constituted a "transaction" as that term is defined in California Civil Code section 1761(e).

129.    Defendant's conduct alleged herein violates the following provisions of California's Consumers Legal Remedies Act ("CLRA"):

CLASS ACTION COMPLAINT

(a)     California Civil Code section 1770(a)(5), by representing that the goods have characteristics, ingredients, uses, benefits, or quantities that they do not have;

(b)     California Civil Code section 1770(a)(7), by knowingly, recklessly, and/or representing that the Products were of a particular standard, quality, or grade, when they were of another;

(c)     California Civil Code section 1770(a)(9), by knowingly, recklessly, and/or intentionally advertising the Products with intent not to sell them as advertised; and

(d)     California Civil Code section 1770(a)(16), by representing that the Products have been supplied in accordance with previous statements when they have not.

130.     Defendant profited from the sale of the misleadingly, falsely, deceptively, and unlawfully advertised Products to unsuspecting consumers. Specifically, Defendant misleadingly marketed to reasonable consumers that the Products did not contain Heavy Metals based on the *Ingredient Representations* on the Products.

131.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

132.     Plaintiff and members of the California Subclass have suffered harm and seek injunctive relief in the form of modified advertising and a corrective advertising plan.

133.     Pursuant to California Civil section 1782(d), Plaintiff and the California Subclass seek a court order enjoining the above-described wrongful acts and practices of Defendant.

134.     Pursuant to California Civil section 1782, Plaintiff notified Defendant in writing by certified mail of the particular violations of California Civil Code section 1770 and demanded that Defendant rectify the problems associated with the actions detailed above and to give notice to all affected consumers of Defendant's intent to so act. A copy of the letter is attached hereto as Exhibit A.

135.     If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and to give notice to all affected consumers within 30 days of the date of

CLASS ACTION COMPLAINT

written notice pursuant to California Civil section 1782, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

136.    Pursuant to California Civil Code section 1780(d), attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

**COUNT IV**
**Fraud by Misrepresentation Against Defendant on Behalf of**
**Plaintiff and the Nationwide Class, or Alternatively, the**
**California Subclass**

137.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

138.    Defendant's *Ingredient Representations* on the Products, which were purchased by Plaintiff and members of the Classes, misled Plaintiff and members of the Classes to believe that the Products were of high quality and nutritious, information that is material to Plaintiff and members of the Class.

139.    The *Ingredient Representations* by Defendant were false because the Products contained or risked containing Heavy Metals.

140.    Defendant knew the *Ingredient Representations* were false when Defendant made them because:

(a)    Defendant was in a superior position to know the true state of facts about its Products;

(b)    Defendant was in a superior position to know the true nature of the ingredients, characteristics, and suitability of the Products for consumption; and

(c)    Defendant knew that Plaintiff and the Classes could not reasonably have been expected to learn about the presence or risk of Heavy Metals in the Products without Defendant disclosing it on the Products' packaging.

141.    In addition, Defendant made the *Ingredient Representations* recklessly and without regard for its truth because Defendant knew that properly and sufficiently monitoring for Heavy Metals in the Products and their ingredients was not only important, but also critical.

CLASS ACTION COMPLAINT

142. Defendant knew or should have known the *Ingredient Representations* would induce Plaintiff and the Class members to purchase the Products.

143. The Plaintiff and members of the Classes reasonably relied on the Claims because Defendant knows its customers trust the quality of its products and expect Defendant's representations to be true. Defendant also knows that consumers seek out and wish to purchase protein powders and supplements that possess high quality ingredients free of Heavy Metals, and that these consumers will pay a premium for protein powders and supplements that they believe possess these qualities.

144. The Plaintiff and members of the Classes were harmed as a direct and proximate result of Defendant's conduct. Plaintiff and the Class members suffered actual damages by: (1) paying a premium price for Products they reasonably believed were of high quality and nutritious and that did not contain (or have a material risk of containing) Heavy Metals; (2) purchasing Products they would not have purchased had the true quality and nutritiousness and the presence or risk of Heavy Metals in the Products been disclosed; and/or (3) receiving Products that were worthless because they contained or risked containing Heavy Metals.

145. The Plaintiff's and members of the Classes' reliance on Defendant's representations was a substantial factor causing harm to the Plaintiff and the Class members. The detriment is evident from the true quality, characteristics, and nature of the ingredients of the Products, which is misleading when compared to the Products' packaging and represented by Defendant and inherently harmed consumers of the Products, such as Plaintiff and the Classes.

146. Plaintiff and the Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**COUNT V**
**Negligent Misrepresentation Against Defendant on Behalf of**
**Plaintiff and the Nationwide Class, or Alternatively, the**
**California Subclass**

147. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

CLASS ACTION COMPLAINT

148.    Defendant marketed the Products in a manner conveying to reasonable consumers that the Products do not contain (or materially risk containing) Heavy Metals.

149.    Defendant's *Ingredient Representations* are material to a reasonable consumer because they relate to human health and food safety. Reasonable consumers would attach importance to such representations and would be induced to act thereon in making purchasing decisions. Defendant intends that Plaintiff and other consumers rely on the *Ingredient Representations*, as evidenced by the intentional and conspicuous placement of the *Ingredient Representations* on the labels.

150.    In selling the Products, Defendant acted in the ordinary course of its business and had pecuniary interest in Plaintiff and other members of the Classes purchasing the Products.

151.    Defendant owed a duty of care to Plaintiff and the Class members to not provide them with false information when they were making their purchasing decisions regarding the Products.

152.    Defendant knew or had been negligent in not knowing that the Products contained toxic Heavy Metals. Defendant had no reasonable grounds for believing the *Ingredient Representations* were not false and misleading.

153.    Defendant negligently marketed that the Products did not contain Heavy Metals based on the *Ingredient Representations*.

154.    Plaintiff and Class members reasonably and justifiably relied on the *Ingredient Representations* when purchasing the Products and, had the correct facts been known, would not have purchased the Products at the prices at which they were offered (or at all).

155.    Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and other members of the Classes have suffered economic losses and other general and specific damages, in the amount of the Products' purchase prices, or some portion thereof, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

CLASS ACTION COMPLAINT

## COUNT VI

**Unjust Enrichment Against Defendant on Behalf of Plaintiff and the Nationwide Class or, Alternatively, the California Subclass**

156.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

157.    Defendant's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and the Class Members' purchases of the Products, and the economic benefits conferred on Defendant are a direct and proximate result of its unlawful and inequitable conduct.

158.    It would be inequitable, unconscionable, and unjust for Defendant to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

159.    As a result, Plaintiff and members of the Classes are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of such business practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including (as appropriate):

A.    An order declaring this action to be a proper class action, appointing Plaintiff and his counsel to represent the Classes, and requiring Defendant to bear the costs of class notice;

B.    An order enjoining Defendant from selling the Products until the presence or risk of Heavy Metals are eliminated;

C.    An order enjoining Defendant from selling the Products with the *Ingredient Representations,* or in any manner suggesting or implying that they are of a certain quality and made from nutritious ingredients, unless the products have non-detectable levels of Heavy Metals;

D.    An order requiring Defendant to engage in a corrective advertising campaign and

CLASS ACTION COMPLAINT

1  engage in any further necessary affirmative injunctive relief;

2       E.      An order awarding declaratory relief, and any further injunctive relief permitted by

3  law or equity, including enjoining Defendant from continuing the unlawful practices alleged

4  herein, and injunctive relief to remedy Defendant's conduct;

5       F.      An order requiring Defendant to pay restitution to restore all funds acquired by

6  means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business

7  act or practice, untrue or misleading advertising, or a violation of the state laws, plus pre- and post-

8  judgment interest thereon;

9       G.      An order requiring Defendant to disgorge or return all monies, revenues, and profits

10 obtained by means of any wrongful or unlawful act or practice;

11      H.      An order requiring Defendant to pay all actual and statutory damages permitted

12 under the counts alleged herein;

13      I.      An order requiring Defendant to pay punitive damages on any count so allowable;

14      J.      An order awarding attorneys' fees and costs to Plaintiff and the Classes; and

15      K.      An order providing for all other such equitable relief as may be just and proper.

16                                **JURY DEMAND**

17      Plaintiff hereby demands a trial by jury on all issues so triable.

18 Dated: October 21, 2025              **FARUQI & FARUQI LLP**

19                                      By: *s/ Lisa T. Omoto*
20                                      LISA T. OMOTO (SBN 303830)
                                        1901 Avenue of the Stars, Suite 1060
21                                      Los Angeles, CA 90067
                                        Telephone: (424) 256-2884
22                                      E-mail: lomoto@faruqilaw.com

23                                      **FARUQI & FARUQI LLP**
24                                      Zachary M. Winkler (*pro hac vice forthcoming*)
                                        1617 John F. Kennedy Blvd., Suite 1550
25                                      Philadelphia, PA 19103
                                        Telephone: (215) 277-5770
26                                      E-mail: zwinkler@faruqilaw.com

27                                      ***Counsel for Plaintiff and the Putative Classes***

28